## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

_____

Bighorn Wealth Fund, L.P., a Delaware limited
partnership, and End of the Rainbow Partners, LLC.,
a Florida limited liability company,

                                   Plaintiffs,

         v.                                             Case No. 17-1568
                                                        Jury Demand

Carolyn Anderson, as Personal Representative
         of the Estate of Michael Anderson a/k/a
         Michael Frederick Guerra,
Carolyn Anderson,  a Colorado resident
Seaoma Consulting, a Colorado corporation, and
Excalibur Fund Services, a Colorado Corporation,


                                   Defendants.
_____


## COMPLAINT AND JURY DEMAND

For their  complaint against the Defendants, Plaintiffs allege as follows:


### I.  SUMMARY

1.         Plaintiffs are the Bighorn Wealth Fund and the End of Rainbow Partners,

which are suing to recover misappropriated funds to be returned to the investors in

those entities.  Through false pretenses, Plaintiffs' investment funds, which exceed

$13.8 million, were misappropriated into accounts under the control of Michael

Anderson a/k/a Michael Frederick Guerra and Carolyn Anderson, his wife.  Plaintiffs

bring this suit alleging fraud in violations of Section 10(b) of the Securities Exchange

Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, control person liability

under Section 20(a) of the Exchange Act, and various pendent state law claims for breach of fiduciary duties, intentional and negligent misrepresentation, aiding and abetting, civil conspiracy, conversion and breach of contract.

2.      The United States Securities & Exchange Commission ("SEC") commenced an investigation into this matter in late January 2017.  After receiving SEC subpoenas for the entities under their control and their personal accounts, Michael and Carolyn Anderson took steps to destroy trading records and client files. Michael Anderson delayed production of documents to other persons and entities that also received subpoenas and failed to deliver documents that might have been responsive to the subpoenas.  He also sent an empty Fed Ex package to the SEC in response to its subpoenas.

3.      After the SEC commenced its investigation, Michael and Carolyn Anderson also took steps to cause trading losses in the Bighorn Wealth Fund as well as misappropriate the monies from the Bighorn Wealth Fund and End of Rainbow Partners.

4.      More specifically, a substantial amount of the Bighorn Wealth Fund's assets were placed in a trade in NUGT, which is the ticker symbol for Direxon Daily Gold Miners Index Bull 3X Exchange Traded Fund (hereinafter "NUGT ETF").  Michael Anderson placed the trade and neglected his fiduciary duties to monitor it. Instead, he went on a cruise with Carolyn Anderson.  That position had to be closed out after the death of Michael Anderson at a loss of $2.4 million.  Another $1,010,000 million was transferred by Michael Anderson from the Fund's brokerage account to its bank account at Centennial Bank & Trust, which Michael Anderson controlled and from

which Michael Anderson misappropriated $1,001,348.50 to purchase gold bars for which he personally accepted delivery, but are now missing.  An additional $505,800  was moved by interbank transfers into a bank account in the name of Excalibur Fund Services at Centennial Bank & Trust in Vail Colorado,  which was controlled by Carolyn Anderson and from which funds have been misappropriated.

5.      Michael and Carolyn Anderson were married on February 7, 2017, two weeks after the SEC commenced its investigation.   Michael Anderson is now deceased.

6.      Total losses to the Bighorn Wealth Fund are unknown at this time but approximate $3.799 million.

7.      Total losses to End of Rainbow Partners are unknown at this time but approximate $2.979 million.

8.      Plaintiffs request recovery of all funds lost or misappropriated  by Michael Anderson, including the NUGT trade for $2.4 million, recovery of assets (e.g., $1 million in gold bars), and recovery of all other funds misappropriated from accounts over which Michael and Carolyn Anderson exercised control.

9.      Plaintiff also requests other equitable relief needed to stop further movement and defalcation of funds or dissipation of assets belonging to Bighorn Wealth Fund investors and investors in End of Rainbow Partners.

## II.      **PARTIES**

10.      **Bighorn Wealth Fund, L.P.** The Bighorn Wealth Fund (the "Wealth Fund" or "Fund") is a Delaware limited partnership, set up to preserve assets and grow capital.  The agreement of limited partnership states that the business of the Wealth

Fund is "the buying and selling of securities, consisting primarily of exchange traded funds ("ETFs"), and without limitation, stocks, options, warrants, and rights of U.S. and non-U.S. entities."  The agreement of limited partnership further provides that the partnership will ordinarily invest in securities for short periods, even as little as a portion of one day.  On information and belief, the partnership has eighteen (18) limited partners as investors, including End of the Rainbow Partners.  The partnership agreement states that the general partner, Bighorn Wealth Partners, LLC, has delegated authority over the partnerships' trading and management of the partnership portfolio to Bighorn Asset Management, the investment advisor.  Under the asset-based fee agreement between BAM and the Wealth Fund, BAM agreed to manage all investments in accordance with the general investment objectives as disclosed in the Private Offering Memorandum and Agreement of Limited Partnership.

11.     **Bighorn Wealth Partners, LLC**.   The general partner of the Wealth Fund is Bighorn Wealth Partners, LLC ("Wealth Partners"). The agreement of the Wealth Partners provides that the general partner may carry on any lawful business, whether or not for profit, "which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets."  More specifically, the general partner shall "invest in securities," including the ability to form and operate private investment companies and to sell, exchange, or transfer securities of any person, domestic or foreign. The Wealth Partners had four (4) general partners. Michael Anderson held the controlling interest with 37.5% of the general partnership.

12.   **End of Rainbow Partners.** On or about March 10, 2014, Carolyn Anderson, as general partner and registered agent, obtained a certificate of limited partnership for End of the Rainbow Partners ("Rainbow Partners") as a Colorado Limited Liability Company (LLC), located at 2077 N. Frontage Road, Suite 106, Vail, Colorado.  The purpose of Rainbow Partners was for the "financial and educational benefit" of its members. There were five (5) initial members, including Carolyn Anderson, who was also described in the Rainbow Partner's Agreement as managing member with responsibility for day-to-day operations.  Without authority of the other partners/members, on or about June 2, 2015 Michael Anderson changed the state of registration of Rainbow Partners from Colorado to Florida, but continued to list Carolyn Anderson as registered agent and as manager.  While maintaining the same mailing address in Vail, Colorado of 2077 N. Frontage Road, but a different suite number of 104, now listed its business address as 2477 Stickney Point Road, Sarasota, Florida.  The July 2016 statement for Rainbow Partners showed twenty-four (24) investors and showed an aggregate portfolio balance of $10,431,211.60.

13.   On or about October 20, 2016, Michael Anderson again refiled Rainbow Partner's registration with the State of Florida, now listing himself as manager and now using the business address of Bighorn Asset Management, at 225 Wall Street, Suite 220,Vail, Colorado.  And, in or about January 2017, Michael Anderson drafted an entirely different form of agreement which, among other things, stated that its new purpose was only for the "educational benefit' of its members, stated that the

total value of Rainbow Partners was $25 million, required initial capital contributions of $750,000, and stated that it will utilize the services of an "independent" third party administrator.

14.     The original partnership agreement provided that if Michael Anderson's trading prowess generated a certain percentage increase in trading profits or quarterly account values, twelve and one half percent (12.5%) would be "donated," allegedly for use by the Foundation. The new and unauthorized agreement in January 2017, however, required a ten percent (10%) "donation" of profits if the value of the portfolio exceeded four percent (4%) at the each of each quarter.  On information and belief, these purported "donations" were used to support the lavish life style of the Andersons, including five (5) cars (one Grand Cherokee Jeep and another Jaguar) that were leased in the name of Rainbow Partners and/or Rainbow Foundation.

15.     Rainbow Partners also maintained a trading account at Fidelity Investment, which was opened in or about May 2013.

16.     Rainbow Partners maintained a bank account at Centennial Bank & Trust in Vail,  Colorado, through which funds at issue in this case flowed and checks were signed by Carolyn Anderson.   It has a current balance of only $2,500.

17.     **Defendant Estate or Michael Anderson a/k/a Michael  Frederick Guerra**. Michael Anderson, whose real name is Michael Frederick Guerra, has a criminal history record (attempted rape and disorderly conduct).   On February 7, 2017, Michael and Carolyn Anderson were remarried in Eagle County, Colorado.  On February 7, 2017, Michael Anderson also had prepared and signed his last will,

revoking all prior wills and codicils.  On that same date, he also established a trust, with Carolyn Anderson as trustee, into which the rest and remainder of the property of his estate would pour over and be disposed of in accordance with that trust.  On February 11, 2017, Michael and Carolyn Anderson left on an alleged "cruise," but on information and belief, spent time house hunting in Fort Lauderdale.  One week after returning from the "cruise" and advising that a large trade in the Wealth Fund was consistent with his trading model and showed upside potential, Michael Anderson died in Vail, Colorado on February 27, 2017 under suspicious circumstances.   When the Vail Police arrived, they found several boxes in the house that had been packed.

18.     **Defendant Carolyn Anderson**.  Defendant Carolyn Anderson has maintained a continual relationship with Michael Anderson for the last ten (10) years:

(a)     Carolyn Anderson was previously married to Michael Anderson. She divorced him in 2009, on information and belief, knowing that he planned to start operations as an investment advisor in Wyoming without disclosing his prior criminal history.  However, during the time period covered by this Complaint, she continued to be his companion and domestic partner, and they were remarried in February 7, 2017, right before his death.

(b)     On or about September 2012, Defendant Carolyn Anderson bought the house in which they resided at 1460 Buffehr Creek Road, Vail, Colorado for $766,000 on which she took out two mortgages.   The deed on the house is in her name.  She and Michael Anderson continued to live there through February 2017

when he died.  For the period October 2016 through January 2017, she also maintained a post office box in Vail, Colorado: PO Box # 914, Vail, Colorado 8165 (Eagle County).  On information and belief,  there is a contract pending on the sale of the house in Vail.

(c)     Carolyn Anderson is the contact person for the Rainbow Foundation, and she is the managing member of Rainbow Partners.  Seaoma Consulting, which is her company, is listed as the registered agent of Excalibur Fund Services, the so-called third party administrator for the Wealth Fund and for Rainbow Partners, which , in turn, is listed as the registered agent for Seaoma Consulting.

(d)     On a bankruptcy petition filed in April 2014, she listed herself as a sole proprietorship with no other individuals and no EIN number, describes the nature of her business from January 2007 to current as "professional market timer/ day trader."

(e)     She also lists on her 2014 bankruptcy petition two other companies when describing her business: End of the Rainbow Foundation, and End of the Rainbow Partners.

(f)     Defendant Carolyn Anderson frequented the business office of BAM to assist with client paperwork, migrate client accounts among broker-dealers, supervise Joe St, John, the former president of BAM, and, on information and belief, help issue monthly statements.

19.     **Defendant Seaoma Consulting Company.**  Seaoma Corporation, the company owned by Defendant Carolyn Anderson,  was first established in Florida on or about March 7, 2011, with Carolyn Anderson listed as the registered gent, but

administratively dissolved in Florida on or about September 28, 2012.  Seaoma

Consulting Company ("Seaoma") was then registered in Colorado on or about April

15, 2014 with its principal business address at 2077 N. Frontage Road West, Vail,

Colorado. The registered agent for the Colorado entity is Rainbow Partners, but

bears the same business address in Vail, Colorado and Carolyn Anderson is listed as

the person who caused the filing of the registration.  In addition, Seaoma owns forty

percent (40%) Bighorn Holdings, the parent company of BAM, and Seaoma received

checks for management fees earned by BAM. Further, Seaoma Consulting is the

registered agent for Excalibur Fund Services.

20.    **Defendant Excalibur Fund Services**.  Excalibur Fund Services ("Excalibur")

is purportedly the "independent" third party administrator for both Rainbow

Partners and the Wealth Fund.

(a)    On or about August 25, 2016, Michael Anderson sent an email to all

investors in Rainbow Partners announcing that, to take the responsibility "off [his]

shoulders" and to provide performance verification through independent portfolio

valuation services, he would now out-source this "burden" to Excalibur Fund

Services, which he described as an "independent" third party administrator.  He

stated that the responsibilities of Excalibur would be to provide independent

portfolio valuation verification services,  calculate monthly and quarterly net assets

values, reconcile brokerage, bank and custodian accounts, assist outside auditors

with preparation of year-end financials, and "liaise, as necessary, with investment

managers, banks, custodians, auditors, and investors."

(b)      Within two (2) weeks, Michael Anderson provided the same notification to Wealth Fund investors. The Wealth Fund previously utilized Fund Associates as its third party administrator, which prepared monthly account statements for Wealth Fund investors.   However, on or about September 13, 2016, claiming that Fund Associates took too long ("over 1 week and sometimes up to 2 weeks") to complete monthly account statements, Michael Anderson sent an email to the Wealth Fund investors announcing "an excellent improvement to our reporting and reconciliation system" that was going to be implemented.  He stated that he had signed a contract with Excalibur, which, according to Michael Anderson, had "promised" monthly statements within five (5) business days.  Michael Anderson claimed that this change "will ensure better accuracy and transparency."

(c)      On information and belief, Excalibur is only a virtual office site, with an address listed as 8 The Dover Green, Dover, Delaware, which allows anyone to set up any type of company they wish.   Michael Anderson never set up Excalibur until almost three (3) weeks after his email to  investors in Rainbow Partners and three (3) days after his email to Wealth Fund investors by registering it as a new company with the Colorado Secretary of State, with its principal office at 1460 Buffehr Creek Road, unit G, Vail Colorado, the home address of the Andersons. According to the Colorado Secretary of State filing, the registered agent for Excalibur is Seaoma Consulting, the company owned by his wife, Defendant Carolyn Anderson.

(d)      Kya Andrews is purportedly the senior accountant for Excalibur, but on information and belief, she is a fictitious person.

## II.      NON- PARTIES

10

21.   **Bighorn Asset Management**. Bighorn Asset Management ("BAM") was formed in or about April 2015.  Its main office was at 225 Wall Street, Vail, Colorado.

(a)      Through BAM, Defendant Michael Anderson, as BAM's chief analyst and head trader, provided investment advisory services (limited to trading and billing authority only) for the Wealth Fund  and other funds.

(b)      Rainbow Partner assets were not managed by BAM; they were managed separately and independently from BAM by Michael Anderson.

(c)      BAM was wholly owned by Bighorn Holdings ("Holdings"), forty percent (40%) of which was owned by Defendant Carolyn Anderson through Seaoma Consulting.

(d)      From May 1, 2015 through November 3, 2016, BAM was an investment advisor registered with the SEC.  Once BAM had confirmation that there were no more separately managed individual accounts, on November 3, 2016 BAM withdrew its SEC registration and filed as an Exempt Reporting Advisor ("ERA") and remained registered as an ERA until March 31, 2017 when its registration was withdrawn.

22.   **End  of the Rainbow Foundation**.  In or about 2008, Defendant Michael and Carolyn Anderson first formed End of the Rainbow Foundation ("Rainbow Foundation), purportedly a 501(c)(3) non-profit charitable foundation for the neglect, abuse and exploitation of women and children.  An internet site states that the Andersons hoped to create opportunities for young people from Ecuador and their families to improve the quality of their lives through support for education, academics, and extra-curricular activities.  It received its tax-exempt status from the

IRS in 2013.

(a)     January 2017 marketing literature states that Defendant Michael Anderson "serves as the CFO for the foundation and manages the cash flow needs for the foundation by implementing his proprietary investment model.  As the returns from the foundation began to generate outside attention, Mr. Anderson decided the time was right to offer the strategy to other non-profit charitable foundations."

(b)     Michael Anderson earned fees trading stocks for contributors to the Foundation through Rainbow Partners, the investment club. The agreement of Rainbow Partners initially provided that twenty per cent (20%) of any trading profit at the end of each month would be donated to the Foundation. That agreement was amended on December 4, 2014 to provide that twelve and one half percent (12.5%) would be donated to the Foundation if the account value at the close of each month was more than one percent (1%) of the prior month's account value.  The agreement was further amended on or about May 5, 2016 to provide that if the investment club's portfolio exceeded four percent (4%) in value at the each of each calendar quarter, then twelve and one half percent (12.5%) would be donated to the Foundation.  On information and belief, these "donations" were used by the Andersons to support their lavish life style in Vail, Colorado.

(c)     An internet site for the Foundation shows Carolyn Anderson as the person to contact, and uses the office address of BAM at 225 Wall Street, Suite 220,Vail, Colorado.   Carolyn was paid $250,000 per year as a salary by Foundation.

(d)      A bankruptcy petition filed by Carolyn Anderson in April l 2014 listed a gift of $100,000 made by her to the Foundation in August 2013.

(e)      Two of the leased cars used by Michael and Carolyn Anderson were registered to the name of the Rainbow Foundation.  A third car was leased under the name of Rainbow Partners.

23.    **Joseph St. John.**  Mr. St. John was the former president of BAM, the asset manager.  However, during his tenure from summer 2015 through March 2016, Michael Anderson did not allow him to engage in any trading, though he was frequently on the business premises of BAM in Vail, Colorado.  Instead, his duties were relegated to those of a clerk, and he was supervised by Carolyn Anderson.

### IV.  VENUE & JURISDICTION

24.    This court has jurisdiction over Plaintiff's claims under the Securities Exchange Act of 1934 pursuant to Section 27(a) of the that Act, 15 U.S.C. ¶78aa (a), and under  28 U.S.C. § 1331.

25.    This court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C § 1367 because those claims are so related to the federal claims that they form part of the same care or controversy.

26.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because defendants have been inhabitants, registered and maintain their principal place of business, and have transacted business in the District of Colorado.

## V. FACTS

### A.   End of Rainbow Partners ("Rainbow Partners")

27.     Rainbow Partners was an investment club used to finance and support the Rainbow Foundation.  Michael Anderson used the auspices of Rainbow Foundation and its alleged eleemosynary purposes to solicit investors for Rainbow Partners.  He offered them a tax deduction, and he obtained more investment money for stock trades on which he could earn fees.   He ultimately used the money for himself and Defendant Carolyn Anderson, including expensive rental cars, an expensive private school for their children and, on information and belief, their home in Vail, Colorado.

28.     Initially, investors in Rainbow Partners were required to invest a minimum of $25,000 into cash accounts.  In or about June 2016, Michael Anderson ascertained a way to transfer IRA accounts to Midland as an alternative asset manager for further credit to Rainbow Partners.  Several investors transferred their IRA accounts to Michael Anderson for him to manage.  He was thus able to increase the number and types of accounts – as well as total dollar amounts for – accounts he could manage and in one account.

29.      Michael Anderson advertised that he had generated performance data for Rainbow Partners back to January 2014.  Since Rainbow Partners was not set up until March 2014, however, there could be no performance data regarding returns prior to that time.

30.     The monthly account statement for April 2014 at Fidelity Investments for Rainbow Partners showed a beginning balance of $700,000.  Michael Anderson also

set up an account at InterActive Brokers in to which he made deposits of $100,000 on September 16, 2016 and $600,000 on December 29, 2016.

31.     The monthly account statements sent to each investor in Rainbow Partners while showing an approximately accurate dollar figure  for that person's account, overstated the dollar amount of that account on account statements of other limited partners; and, the schedule of members, used by Michael Anderson to market Rainbow Partners, overstated the total value of the entire portfolio:

(a)     The monthly account statement for Mr. Shawn Stuart, member # 2077010, shows he invested $140,000 in Rainbow Partners.  His monthly statement for July, August and September 2016 showed an account value that ranged from $142,600 to $145,000.  However, the schedule of members as of October 31,2 016 and used by Michael Anderson to promote Rainbow Partners and demonstrate a much larger dollar amount of assets under management ("AUMs") showed Mr. Stuart's account as having a value of **$1,469,713**.

(b)     Similarly, Mr. Snowden Smith invested $ 519,667.  However, on the schedule of members used by Michael Anderson to promote Rainbow Partners to other investors, Michael Anderson showed Mr. Smiths' account as having a value of **$5,143,997**.

(c)     Further, for March through September  2016, Mr. Michael W. Stuart's statement shows an investment of $500,000.  However, the schedule of members prepared and issued by Michael Anderson showed Mr. Cash's account as having a value of **$3,841,416**.

(d)     The account values for Mr. Shawn Stuart and Mr. Jeff Neher were also fabricated on each other's statements.  On the March 2016 monthly statements,  Mr. Stuart's account shows a value on his personal statements of $140,000, but shows a value of $340,000 on Mr. Neher's statement.  On the May/June 2016, monthly statements, Jeffrey Neher's investment on his personal statements shows $250,000 but on Mr. Neher's total investment on Mr. Stuart's  monthly statements is reported as $3.1 million.  Mrs. Paula Neher's personal statement shows her investment as $500,000 but appears on Mr. Stuart's statement at $2.5 million.

(e)     Total closing balances for all accounts are inconsistent and fabricated on several statements for the same date:

| Date | Investor | Total Portfolio Balance |
|---|---|---|
| March 2016 | Shawn Stuart | $ 4,317,510.57 |
|  | Jeffrey Neher | $13,287,568.74 |
| April 2016 | Shawn Stuart | $4,345,929.16 |
|  | Jeffrey Neher | $14,808,321.91 |
| May/ June 2016 | Shawn Stuart | $,399,027.75 |
|  | Jeffrey Neher | $14,999,682.18 |

32.     Thus, the total dollar amount invested in Rainbow Partners in unknown.  Some documents suggest a total of $3.8 million.  However, a July 2016 statement for Rainbow Partners showed twenty-four (24) investors and showed an aggregate portfolio balance of $10,431,211.60.  A later schedule of members, over the signature of Michael Anderson and dated as of October 31, 2016, shows a total portfolio value of $29,295,530.99.

33.     Michael Anderson also used different versions of the membership agreement when soliciting new investors which he did not disclose to existing members:

(a)      Whereas the approved form of membership agreement stated that the purpose of Rainbow Partners, as an investment club, was to invest the club's assets in stocks, bonds and securities for the" financial and educational benefit" of the limited partners, the unapproved version used by Michael Anderson in January 2017 stated that the purpose of the partnership was for "**educational benefit** of the members."

(b)     Whereas the authorized form of membership agreement required an initial contribution of $25,000, a version used by Michael Anderson in January 2017 for the investment of William Cameron Lewis required an initial contribution of $750,000.

(c)     Whereas the aggregate portfolio value of Rainbow Partners was approximately $3.8 million, Michael Anderson stated in the January 2017 version of the agreement that the total value of Rainbow Partners was **$25 million**.

**B.      Bighorn Asset Management ("BAM").**

34.     Michael Anderson was the chief analyst and head trader of BAM, the asset manager for the Wealth Fund.   He placed and monitored all trades.  Michael Anderson established all relationships with broker-dealers and trust companies, including TD Ameritrade, Midland, Millennium, and Inter Active Brokers, the entity from which Michael Anderson ultimately misappropriated funds in January 2017.

35.     Through Seaoma Consulting, he and Defendant Carolyn Anderson also controlled BAM and its bank accounts.

36.     As alleged in paragraph 23 above, Michael Anderson did not allow Joseph St. John as president of BAM to transact any business in securities, instead relegating his function of that of a clerk under the supervision of Defendant Carolyn Anderson.

**C.      Bighorn Wealth Fund (the "Wealth Fund" or "Fund")**

37.     Defendant Michael Anderson a/k/a Guerra claimed that he needed to switch brokerage firms purportedly on the grounds that their trading platforms could not accommodate his day trading or his block trading.  In reality, he switched brokerage firms so that he could more easily maneuver and transfer monies between broker-dealers and banks as he wished.  As he had done with investor accounts in Rainbow Partners,  he also solicited  IRA accounts from Wealth Fund investors for Midland and pension accounts to Millennium, thereby increasing the number and types of accounts, and the total dollar of AUMs,  on which he could earn management fees.

**D.      Excalibur Fund Services ("Excalibur")**

38.     *Rainbow Partners*.  As alleged in paragraph 20(a) above, on or about August 25, 2016  Michael Anderson sent out an email announcing that he would be transferring the duties of the third party administrator to Excalibur, with an address of 8 The Dover Green, Delaware.  The senior fund accountant was listed as Kya Andrews, who is believed to be non-existent and has failed to respond to emails sent by investors in Rainbow Partners.

39.      *Wealth Fund.*  As alleged in paragraph 20(b) above, on or about September 14, 2016 Michael Anderson also sent a similar email to Wealth Fund investors to announce "an excellent improvement" to the Wealth Fund's reporting and reconciliation system. The prior third party administrator, Fund Associates, was being replaced with Excalibur, which Michael Anderson falsely claimed was being done to "ensure better accuracy and transparency."

40.      Three (3) days later, on or about September 16, 2016, using the Delaware virtual office website, Michael Anderson set up Excalibur.  The registered agent was listed as Seaoma Consulting, the company owned by his wife, Defendant Carolyn Anderson.

41.      As alleged in described in paragraphs 54 and 56 below, $497,000 was transferred from the Fund's account at Centennial Bank & Trust by interbank transfers to Excalibur's account at Centennial Bank & Trust, and another $8,800 was paid in fees to Excalibur. Thus, Excalibur has either misappropriated or illegally received funds of $505,800.

**E.      SEC Investigation**

42.      On or about January 18, 2017, the United States Securities and Exchange Commission ("SEC") issued numerous subpoenas to several persons and entities associated with Michael Anderson, including BAM, the Fund's asset manager.

43.      The president of BAM contacted Michael Anderson about the need to supply all information requested by the SEC subpoena about trades, block trading and trade allocations; customer account statements; commissions and fees; the asset manager's accounts at various brokerage firms and banks; and salaries, bonuses,

commissions and finder's fees.  Michael Anderson initially promised to supply the

information, but then began making excuses why he could not do so right away,

partially claiming that he was going on a cruise with his wife.  BAM never received

any documents.  Nor did the SEC, to which Michael Anderson mailed some empty

mailers.

44.     The subpoenas to BAM also required production of all documents and

communications regarding Rainbow Foundation and Rainbow Partners.   When

requested to provide them, Michael Anderson refused to provide any of those

documents, claiming that he had received subpoenas for those records and he would

take care of it.  He never did.

45.     The Wealth Fund and BAM also sought all information from Michael

Anderson about Excalibur, the third party administrator., After several requests, on

February 20, 2017,  BAM received what it now believes to be a bogus email from

Kya Andrews,  stating that neither the president nor the chief compliance officer of

BAM were authorized persons to obtain such information and directed them to

contact Michael Anderson, "the Fund's general partner," even though Excalibur was

the third party administrator of the Fund.   The fake email directed them to contact

Michael Anderson.  Of course, the email was a ruse written by Michael Anderson

and/or Defendant Carolyn Anderson, who had already refused to turn over any such

records.

F.     **Theft and Commingling of The Fund's and Rainbow Partner's Money**

46.     On or about September 26, 2016, Michael Anderson transferred $1,000,000 from the account of Rainbow Partners at TD Ameritrade into the Wealth Fund's account at Interactive Brokers.  The reason for the transfer is unknown.

47.     With the SEC closing in on his conduct, Michael Anderson took steps to move money out of the Wealth Fund and Rainbow Partners into accounts he and his wife controlled.

48.     On or about January 24, 2017, within one (1) week after the SEC subpoenas, Michael Anderson transferred $1,010,000 from the Wealth Fund's brokerage account at InterActive Brokers to the Fund's account at Centennial Bank & Trust in Vail, Colorado; and, on January 30, 2017, Michael Anderson transferred another $200,000 from the Wealth Fund's account at Interactive Broker to the Wealth Fund's account at Centennial Bank & Trust in Vail, Colorado.  The total amount transferred from the Wealth Fund's account at Interactive Brokers to the Fund's account at Centennial Bank & Trust, over which Michael Anderson had exclusive control, was $1,210,000.

49.     On or about January 27, 2017, by interbank transfer Michael Anderson moved $100,000 from the account of Rainbow Partner at Centennial Bank & Trust into the Wealth Fund's account at that bank;  and,  on or about January 31, 2017, by interbank transfer he moved another $50,000 from the account of Rainbow Partners to the Wealth Fund's account.

50.     Michael Anderson and Defendant Carolyn Anderson then proceeded to misappropriate the money.

1. Gold Bars

51.     Using the $1,010,000 Michael Anderson had wired from the Wealth Fund's

account at InterActive Brokers into the Wealth Fund's bank at Centennial Bank &

Trust in Vail, Colorado,  the next day, on or about January 25, 2017, Michael

Anderson transferred $1,001,348.50 of that money to Goldline in Los Angeles,

California to purchase bars of gold.

52.     On February 6, 2017, Dunbar Armored Global Logistics delivered the gold

(weighing 53 pounds) to the Wealth Fund at BAM's office address at 225 Wall Street,

in Vail, Colorado.  Michael Anderson signed his name on the receipt for it and took

personal delivery.

53.     The gold bars have disappeared.

2.     Funds Transferred to Excalibur

54.     From the Wealth Fund's account at Centennial Bank & Trust, Defendant

Michael Anderson effected interbank transfers to the account of Excalibur at

Centennial Bank & Trust as follows:

| Date | Amount |
|------|--------|
| January 24, 2017 | $50,000 |
| January 27, 2017 | $97,000 |
| January 27, 2017 | $100,000 |
| January 31, 2017 | $200,000 |
| January 31, 2107 | $50,000 |
| Total | $497,000 |

55.      On information and belief, $357,551.50 was money belonging to the Wealth

Fund, and the balance of $139,448.50 was transferred into the Excalibur account at

Centennial by interbank transfer from Rainbow Partner's account at Centennial

Bank & Trust.

3.      Management and Administrator Fees Paid

56.      For the relevant period, Michael Anderson and Defendant Carolyn Anderson received fees for managing the Wealth Fund of approximately $40,900 as well as $8,800 in fees for Excalibur, as third party administrator of the Wealth Fund.

57.      Michael Anderson and Defendant Carolyn Anderson also took $88,000 in management fees for managing Rainbow Partners.

**G.      The Marriage and Cruise.**

58.      On or about February 7, 2017, after the money had been stolen and commingled, Michael and Carolyn Anderson remarried.

59.      On or about February 11, 2017, the newly wedded Andersons allegedly traveled to Fort Lauderdale for a cruise.   On information and belief, the Andersons also looked for a house while in Fort Lauderdale.

**H.      NUGT Trade.**

60.      On or about February 6, 2017, the day before the Anderson's marriage, Defendant Michael Anderson placed a $8.986 million trade in NUGT  -  *i.e.,* 700,000 shares at $12.837 – with a sell order at $16 per share, a 24.5% % increase in price, but no stop loss order on the downside.   Michael and Defendant Carolyn Anderson then went on their alleged cruise.   He failed to monitor the trade while on the supposed cruise and did not unwind the trade when he returned.

61.      On or about February 17, 2017, while the Andersons were away on their cruise, the president and chief compliance officer of BAM discovered the NUGT trade in the system, at which time inquiries were immediately sent to Michael Anderson

to explain the trade, which was 90% of the Wealth Fund's total assets.   Michael Anderson reported on February 20, 2017 that the NUGT trade was showing significant upside potential on his trading model and should remain.

62.      When Defendant Michael Anderson failed thereafter for almost one week to respond to further inquiries about the NUGT trade, Plaintiff sent an agent to Vail, Colorado on February 27, 2017 to locate him.  That agent reported back that Michael Anderson might have died that same day, February 27, 2017.

63.      After they learned that Michael Anderson died, the NUGT position was sold. The Fund incurred a loss of $2.346 million.  Total Fund assets reported for February 28,  2107  had dropped to $7.314 million.

**I.      The BAM Office in Vail, Colorado**

64.      Two days after the death of Michael Anderson, the president of BAM and its chief compliance officer, both of whom lived in Florida, traveled to Vail, Colorado to inspect BAM's offices, to retrieve and preserve all documents, and learn all they could.

65.      Since only Michael Anderson knew the security code to the front door of the office, they set off the alarm so that the Vail Police would be notified and come to assist.  They photographed the premises on entry.

66.      After entering, they discovered that the hard drives on the computers used for trading had been removed.  Client files were also missing. Other documents were found in the shredder.

67.     Among the papers on the desk, the Vail Police also found a piece of paper on

which Michael Anderson had written:

> "Money from IB to Bighorn"
>
> "Get mail for Excalibur"
> "Set up gold storage"
> "Move money eotrp to BWF"
> Figure spot gold price"

**J.      Death of Michael Anderson**

68.     On or about February 27, 2017, Michael Anderson was discovered in his

garage, apparently having died of carbon monoxide affixation.

69.     When representatives of the Vail Police Department were called to the house

where Michael Anderson died, they observed that boxes had been packed.

70.     When the Vail Police later obtained a search warrant for the house, the Trade

Station computers,  known from pictures to have been located in the kitchen of the

house and used to trade stocks, were gone.

**K.      Anderson House in Vail, Colorado**

71.     The house in Vail Colorado at 1460 Buffehr Creek Road, Unit G, which the

Andersons occupied during the conduct alleged in this Complaint, was purchased in

the name of Carolyn Anderson in September 2012 for $1,095,000, though as noted

in paragraph 18(b) above, she stated in her bankruptcy petition that it was

purchased for $766,000.  That petition also reported that she had taken out took out

two mortgages totaling $845,000.

72.     On information and belief, ill-gotten gains and proceeds belonging to the

Wealth Fund and/or Rainbow Partners were used to pay down the mortgages.

73.     The house in Vail Colorado is now up for sale for $1,625,000.

74.     Defendant Carolyn Anderson has emptied the house and moved elsewhere. Her current residence is unknown.

## VI.     CLAIMS FOR RELIEF

### COUNT I

**Violation of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5 Thereunder
By
All Defendants**

75.     Plaintiffs repeat and re-allege paragraphs 1 through 74 as if fully set forth herein.

76.     Defendant Michael Anderson owed fiduciary duties to the limited partners in the Wealth Fund as investors and to his other general partners.   As the chief analyst and managing general partner through his controlling interest in BAM, the investment advisor, he owed to the limited partners in the Wealth Fund as investors a fundamental obligation to act in their best interest.  He owed them the duties of undivided loyalty and utmost good faith, the duty to avoid conflicts of interest, and the duty to avoid misleading them as clients and disclose to them all material information.  He breached these duties.

77.     Under state law, he also owed duties of care and loyalty to the limited partners of the Wealth Fund to hold property of the partnership as a trustee and to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.  He also breached those duties.

78.     To his other general partners, he also owed a fiduciary duty, including the duty of care and loyalty.  He also was required to exercise his duties consistent with

the obligation of good faith and fair dealing.  As with his duty to limited partners,

Michael Anderson breached this duty to his other general partners. He  purposely

withheld information from the other managing partners of BAM so as to inhibit the

performance of the their duties.

**Fraudulent Devices, Schemes and Artifices to Defraud, and Fraudulent Acts, Practices and Courses of Business That Operated as a Fraud**

79.      Michel Anderson engaged in various devices, schemes and artifices to

defraud, as well as acts, practices and courses of business that operated or would

operate as a fraud or deceit on the investors in the Wealth Fund.

80.      As described in paragraphs 46-50 above, Michael Anderson misappropriated

and commingled the monies of the Wealth Fund and Rainbow Partners by using

various brokerage and bank accounts of the Wealth Fund and Rainbow Partners to

commingle funds to mask money transfers .

81.      Defendant Michael Anderson failed to inform the Wealth Fund's investors

that Excalibur was a sham operated by him and his wife, Defendant Carolyn

Anderson, and used to funnel money into a bank account, which, on information and

belief, he and his wife used to finance personal expenses.

82.      The Fund incurred a loss of $2.346 million on the NUGT trade.

83.      As described in paragraphs 51-53 above, Michael Anderson had no authority

to purchase the gold, and had no authority to abscond with gold and secret it away.

It was theft of investor money.

84.      As described in paragraphs 54 and 55  above,  Michael Anderson, as part of

his fraudulent devices, artifices and schemes, as well as his fraudulent acts, practices

and courses of business transferred $497,000  from the Fund's account at

Centennial Bank & Trust to the account of Excalibur, the company for which he was manager and his wife was the registered agent.  The money cannot be traced further.   Plaintiffs have been informed that there is only $2,500 remaining in the Excalibur account. This transfer of money was another theft of Fund money by Michael Anderson and Defendant Carolyn Anderson.

85.     As stated in paragraphs 56 and 57 above, Michael paid himself and Defendant Carolyn Anderson management fees and fees for the sham role Excalibur played as third party administrator.

**False and Misleading Statements**

86.     Michael Anderson used a false and misleading document called the "Bighorn Strategy" to market the Wealth Fund.  He falsely claimed that Bighorn's "autoregressive integrated moving average" ("ARIMA") trading model generated an unusually high success rate on executed trades and claimed that "we employ a rules based risk management protocol that includes but is not limited to deploying a *small* percentage of the overall portfolio on new trades and strict stop loss orders." (Emphasis added).   The NUGT trade was anything but what Michael Anderson represented: it was not small, there were no stop loss orders to protect the downside, and if there were any risk-based protocols, they were ignored.

87.     A power point presentation, or "slide deck," used by Michael Anderson to promote the Wealth Fund touted its ARIMA trading model and claimed that Excalibur was an "independent 3rd party administrator that handles all portfolio valuation verification." This statement was false because Excalibur was not independent since it was owned by Michael and Carolyn Anderson.  And it did not

provide independent portfolio value verification, because the figures were made up. It was a sham.

88.     Michael Anderson also created performance data for the Wealth Fund that included false and misleading performance data allegedly created for and generated by Rainbow Partners.  More specifically, Defendant Michael Anderson created a power point presentation – the "slide deck"  – for investors that included performance data back to January 2014 – two and one-half years before the Wealth Fund even began, and three (3) months before Rainbow Partners came into existence.  This data was materially false and misleading.   Although Defendant Anderson claimed it to be based on performance data from Rainbow Partners, it did not accurately report the actual performance of Rainbow Partners.

89.     In order to retain Wealth Fund investors and prevent requests for reimbursement and withdrawals, Michael Anderson failed to tell the Fund's investors about the theft and misappropriation of funds, the improper and outsized NUGT trade,  the purchase of gold bars, and the real owners of Excalibur.

90.     These statements and omissions were materially false and misleading.  There is a substantial likelihood that a reasonable investor would want to know such information; it would alter the total mix of information presented to investors.

91.     The Wealth Fund's investors relied to their detriment on the conduct and statements of Michael Anderson.   The Wealth Fund and its investors are presumed to have relied on the omissions because there is a substantial likelihood that a reasonable investors would have considered the omitted information important in deciding to invest or withdraw his or her funds.

92.     The fraudulent practices and false and misleading statements alleged herein occurred in connection with the purchase and sale of securities.

93.     But for the conduct, misrepresentations and omissions, investors would not have invested in the Wealth Fund or would have withdrawn their money from the Wealth Fund.

94.     The fraudulent conduct, misrepresentation and/or or omissions were a foreseeable and proximate cause of the losses experienced by the Wealth Fund and its investors.  The frauds perpetrated by Defendants induced the transactions by Plaintiffs' investors,  and the losses suffered by Plaintiffs' would not have occurred absent Defendants' fraudulent conduct, misrepresentation and/or or omissions.

95.      Michael Anderson both individually and through the other entity defendants acted not only recklessly but also with intent to deceive and defraud the Wealth Fund and its investors.  The facts as alleged in this Complaint demonstrate intentional, reckless, willful, conscious and purposeful misbehavior.  Michael Anderson's behavior represents an extreme departure from the standards of ordinary care and falls woefully short of the duties imposed on him as an investment adviser and a general partner of the Wealth Fund.  He had access to information and possessed knowledge of information and conduct contradicting his own statements and failed in his duty not only as general partner and head trader but also as the "independent third party administrator" to monitor trades, maintain (and not destroy) accurate books and records, and verify values of each investors and the Wealth Fund's overall portfolio.

96.     Michael Anderson had motive to engage in the fraud alleged herein.  He lived a lavish life style in Vail, Colorado.  The SEC was also closing in on his fraudulent conduct that was about to be brought to light.  He needed to quickly  take steps to move funds from the Fund's account at various brokers, including InterActive Brokers, into accounts he and Defendant Carolyn Anderson controlled. He also needed to create a secure (and secret) investment in gold bars that could be transported wherever they went, did not require monitoring or appreciably fluctuate while in safekeeping or hiding, and could be turned into cash when needed. Through his control of BAM, the asset manager, Bighorn Holdings, the parent company, and Excalibur, the company that provided portfolio and account values, Michael Anderson had the opportunity to effectuate the fraud at all necessary levels alleged herein. Through his misappropriation of funds and payment of fees, Michael Anderson thus benefited in a concrete way from the fraud alleged in this Complaint.

97.     Plaintiff Wealth Fund incurred damages of at least $3.745 million.

98.     Accordingly, Michael Anderson violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.FR. § 240.10b-5, promulgated thereunder.

**COUNT II**

**Violation of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5 Thereunder
Against
All Defendants**

99.     Plaintiffs repeat and re-allege paragraphs 1 through 98  as if fully set forth herein.

100.     On information and belief, the Rainbow Foundation was a fiction and scam. Michael Anderson and Carolyn Anderson used Rainbow Partners, an investment club, to support the Foundation's alleged eleemosynary purposes.

101.     Defendant Carolyn Anderson and Michael Anderson owed fiduciary duties of loyalty and care to the members of Rainbow Partners as investors, which they breached.  As an investment advisor to the investment club, under the federal securities laws Michael Anderson owed to the limited partners of Rainbow Partners a fundamental obligation to act in their best interest.  He owed to them the duties of undivided loyalty and utmost good faith, the duty to avoid conflicts of interest, and the duty to avoid misleading them and disclose to them all material information.

102.     Defendant Carolyn Anderson and Michael Anderson, as managing members, owed fiduciary duties of loyalty and care under statutory and common law to the other members of Rainbow Partners as investors.  The duty of loyalty required both of them to hold and account for the assets, profit and benefits of Rainbow Partners as trustees for the other members.  The duty of care required them to conduct the activities and affairs of Rainbow Partners in such as a manner to refrain from engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law.  When exercising the duty of care and loyalty, they were required to discharge their duties and obligations under state law and under the operating agreement and to exercise any rights consistently with the obligation

of good faith and fair dealing.  Michael Anderson and Defendant Carolyn Anderson breached these duties.

## Fraudulent Devices, Schemes and Artifices to Defraud, and Fraudulent Acts, Practices and Courses of Business That Operated as a Fraud

103.     Michel Anderson and Defendant Carolyn Anderson  engaged in various devices, schemes and artifices to defraud, as well as acts, practices and o curses of business that operated or would operate as a fraud or deceit on the investors in the Wealth Fund.

104.     As alleged in paragraph 28 above, Michael Anderson devised a method to transfer IRA accounts into Rainbow Partners through Midland as an alternative asset manager. Through this devise, scheme, act, practice and course of business, Michael Anderson was able to enlarge his customer base and size of assets of management ("AUMs") in Rainbow Partners, which, in turn, provided he and Defendant Carolyn Anderson with the means to continue their lavish life style.

105.     As alleged in paragraphs 46-55 above, Michael Anderson and Defendant Carolyn Anderson also misappropriated funds belonging to Rainbow Partners and commingled them with monies belonging to the Wealth Fund.

106.     As stated in paragraph 46 above, on or about September 26, 2016, Michael Anderson transferred $1, 000,000 from the Rainbow Partner's account at TD Ameritrade to the Wealth Fund's account at InterActive Brokers.  The transfer was not authorized and was done in breach of the fiduciary duties Michael Anderson and Carolyn Anderson owed as managers of Rainbow Partners to the other members.

107.     Michael Anderson and Defendant Carolyn Anderson also created Excalibur, allegedly as the "independent" third party administrator of Rainbow Partners to

verify valuations, but which in reality was an entity they controlled and through which they perpetrated their fraud.

108.    As alleged in paragraph 54 above, Michael Anderson and Defendant Carolyn Anderson also misappropriated Rainbow Partner money by transferring it into the account of Excalibur, over which they exercised exclusive control.

**False and Misleading Statements**

109.    Michael Anderson issued several pieces of marketing material about Rainbow Partners that contained false and misleading statements, including performance data and monthly account statements.

110.    Michael Anderson contrived fictitious performance data for Rainbow Partners, including both before and after it was established.

111.    As described in paragraph 31 above, Michael Anderson and Defendant Carolyn Anderson, through Excalibur, issued false monthly account statements to the members of Rainbow Partners.

112.    As alleged in paragraph 32 above, the monthly statement for Rainbow Partners for July 2016 also materially overstated the aggregate portfolio value of Rainbow Partners.

113.    As alleged in paragraph 33(b) above, on or about January 6, 2017 Michael Anderson, without authority from other members and in breach of the operating agreement, issued and induced an investor Will Cameron Lewis to sign an entirely new agreement, requiring initial capital contributions of $750,000, claiming the total value of the Rainbow Partners was $25 million, and claiming that the third

party administrator would perform independent accounting of all calculations and monthly account statements.

114.    In order to retain Rainbow members as investors and prevent requests by them for reimbursement and withdrawals, Michael Anderson failed to tell them about the theft and misappropriation of funds, the true aggregate values in their combined accounts, and the real owners of Excalibur.

115.    These statements and omissions were materially false and misleading.  There is a substantial likelihood that a reasonable investor would want to know such information; it would alter the total mix of information presented to him or her as a member of Rainbow Partners.

116.    Members of Rainbow Partners relied to their detriment on the conduct and statements of Michael Anderson and Defendant Carolyn Anderson.   Members of Rainbow Partners are presumed to have relied on the omissions because there is a substantial likelihood that a reasonable investors would have considered the omitted information important in deciding to invest or withdraw his or her funds.

117.    Michael Anderson and Defendant Carolyn Anderson engaged in the fraudulent devises, schemes, acts, practices and course of business as well as made the false and misleading statements alleged herein in connection with the purchase and sale of securities.

118.     But for the fraudulent conduct, misrepresentations and omissions, members would not have invested in Rainbow Partners or would have withdrawn their money from it.

119.    The fraudulent conduct, misrepresentation and/or or omissions were a foreseeable and proximate cause of the losses experienced by members of Rainbow Partners.  The frauds perpetrated by Defendants induced the transactions by Rainbow investors,  and the losses suffered by members of Rainbow Partners would not have occurred absent Defendants' fraudulent conduct, misrepresentation and/or or omissions.

120.    Michael Anderson and Defendant Carolyn Anderson both individually and through Seaoma and Excalibur acted not only recklessly but also with intent to deceive and defraud the members of Rainbow Partners. The facts as alleged in this Complaint demonstrate intentional, reckless, willful, conscious and purposeful misbehavior.  Michael Anderson's behavior represents an extreme departure from the standards of ordinary care and falls woefully short of the duties imposed on him as an investment adviser, and the conduct of Defendant Carolyn Anderson similarly falls woefully short of the duties imposed on her as the managing member.  They both had access to information and possessed knowledge of information and conduct contradicting their behavior and failed as owners of the "independent third party administrator" to monitor trades, maintain (and not destroy) accurate books and records, and verify values of each member as well as Rainbow Partner's overall portfolio.

121.    Michael Anderson had motive to engage in the fraud alleged herein.  They lived a lavish life style in Vail, Colorado.  The SEC was also closing in on their fraudulent conduct that was about to be brought to light.  They needed to act quickly and take steps to move funds from Rainbow's account at various brokers, including

TD Ameritrade, into accounts they controlled.  They also needed to create a secure (and secret) investment in gold bars that could be transported wherever they went, did not require monitoring or appreciably fluctuate while in safekeeping or hiding, and could be turned into cash when needed.  Through their control of Rainbow and Excalibur, they had the means and opportunity to effectuate and mask all levels of the fraud alleged herein.  Both Michael Anderson and Defendant Carolyn Anderson thus benefited in a concrete way from the fraud alleged in this Complaint.

122.     Plaintiffs, as members of Rainbow Partners, have incurred damages of at least $2.979 million.

123.    Accordingly, Michael Anderson and Defendant Carolyn Anderson violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.FR. § 240.10b-5, promulgated thereunder.

### COUNT III

### CONTROLLING PERSON LIABILITY

**Violation of Section 20(a) of the Securities Exchange Act of 1934
Against
Estate of  Michael Anderson a/k/a Michael Guerra
And
Defendant Carolyn Anderson**

124.    Plaintiffs repeat and re-allege paragraphs 1 through 123 as if fully set forth herein.

125.    Michael Anderson controlled Wealth Partners.  As one of the managing members, he held thirty – seven and one-half (37.5%) of Wealth Partners' voting power and "sharing ratio," defined to mean the measure of the equity owner's

economic interest.  He was also the chief analyst and head trader for the Wealth

Fund.  He was the general partner who lived in Vail, Colorado where he traded the

Fund's assets. Further, through Seaoma Consulting, Defendant Carolyn Anderson's

company, he controlled 40% of BAM, the investment advisor. Further, through

Excalibur, he maintained exclusive control over the Wealth Fund's accounts and

those of its limited partners.  Finally, he had trading authority over the Wealth

Fund's brokerage account and had signature authority over the Wealth Fund's bank

account at Centennial Bank & Trust.

126.    Michael Anderson and Defendant Carolyn Anderson also controlled Rainbow

Partners and Excalibur, its third party administrator.  Carolyn Anderson was the

registered agent and managing member of Rainbow Partners.  She sent emails and

letters to new members of Rainbow Partners acknowledging receipt of investment

funds.  She wrote and signed checks on the bank account of Rainbow Partners at

Centennial Bank & Trust.  She also signed checks on behalf of the BAM account at

Centennial Bank & Trust.

127.    As alleged in Counts I and II of this Complaint, both Michael Anderson and

Defendant Carolyn Anderson committed the primary violations of the securities

laws alleged herein.  Michael Anderson placed and failed to monitor the trade in

NUGT which ended in a loss of $2.346 million to the Wealth Fund. He also

misappropriated $1,010,000 from the Wealth Fund's account at InterActive Brokers,

and used $1,001,348.50 of it to purchase gold bars which are no where to be found.

Further,  he transferred $357,551.50 of the Wealth Fund's money to the Excalibur

account at Centennial Bank & Trust, which he controlled and which also has been misappropriated.

128.    As alleged in Count II of this Complaint, Defendant Carolyn Anderson committed violations of federal securities laws through her fraudulent conduct, misrepresentations and omissions regarding Rainbow Partners.

129.    By misappropriating monies of the Wealth Fund and Rainbow Partners and transferring that money to various accounts Michael Anderson and/or Defendant Carolyn Anderson controlled, Michael Anderson acted intentionally and purposefully; and, by placing the NUGT trade and ignoring it in breach of his fiduciary duties to the Wealth Fund and its investors while he went on alleged cruise and then packed up his house on return in order to flee, he acted recklessly.

130.    By participating in Michael Anderson's frauds, defalcations, misrepresentations and omissions, Defendant Carolyn Anderson acted intentionally and purposefully; and by failing to perform her fiduciary duties as managing member of Rainbow Partners and by failing to perform her duties as an independent third party administrator, she breached the duties she owed to members of Rainbow Partners.

131.    Accordingly, Michael Anderson and Defendant Carolyn Anderson violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78t(a).


**COUNT IV**
**BREACH OF FIDUCIARY DUTIES**
**Against**
**Estate of Michael Anderson a/k/a Michael Guerra**

132.    Plaintiffs repeat and re-allege paragraphs 1 through 131  as if fully set forth herein.

133.    Michael Anderson owed several duties as investment advisor and as general partner.

(a)    As alleged in paragraphs 76 through 78 above, Michael Anderson had a fundamental obligation as an investment advisor to Wealth Fund investors under the federal securities laws to act in their best interests. He owed them the duties of undivided loyalty and utmost good faith, the duty to avoid conflicts of interest, and the duty to avoid misleading them as clients and to disclose to them all material information.  He breached these duties.

(b)    He also owed express and implied duties of care and loyalty to Wealth Fund investors under state statutory and common law to hold property of the partnership and the membership as a trustee and to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.  Given the special relationship between Michael Anderson and investors in the Wealth Fund, these investors placed their trust and confidence in him to manage their investments as a fiduciary and trustee, and he accepted that trust.  But, as alleged in this Complaint, he breached those duties.

(c)    Further, he also owed express and implied fiduciary duties to his fellow general partners, including the duty of care and loyalty.  He was required to exercise his duties consistent with the obligation of good faith and fair dealing. Given the special relationship between Michael Anderson and his other general partners, his other general partners in Wealth Partners placed their trust and

confidence in his honesty and integrity to handle the affairs of Wealth Partners and the Wealth, and he accepted that trust.  But, as alleged in this Complaint, Michael Anderson breached this duty to his other general partners.

134.    Defendant Michael Anderson breached his fiduciary duties to the Wealth Fund investors and to the other general partners by engaging in the illegal acts alleged in this Complaint, including unauthorized withdrawal and transfer of funds, commingling of funds, and obstructing justice by refusing to turnover and destroying computer hard drives and shredding documents requested by SEC subpoenas.

135.    In addition, Michael Anderson breached his fiduciary duties to Wealth Fund investors by putting on a trade in NUGT for 90 % of the Fund's assets, and then failing to monitor that trade for the benefit of Fund investors.

136.    As alleged in paragraphs 93 and 94 above, these several breaches of these duties by Michael Anderson were the foreseeable and proximate cause of the losses to Plaintiff Wealth Fund.

137.    As alleged in paragraphs 97 above, Plaintiff Wealth Fund has suffered injury for which it seeks damages, including rescissionary, compensatory, and punitive damages.

**COUNT V**
**BREACH OF FIDUCIARY DUTIES**
**Against**
**Estate of Michael Anderson a/k/a Michael Guerra, and Carolyn Anderson**

138.   Plaintiffs repeat and re-allege paragraphs 1 through 137 as if fully set forth herein.

139.   As alleged in paragraphs 101 and 102 above, Michael Anderson owed express and implied fiduciary duties to members of Rainbow Partners as an investment advisor and as the *de facto* managing member of Rainbow Partners. Given the special relationship between Michael Anderson and members of Rainbow Partners, the members placed their trust and confidence in him to manage their money carefully, honestly and truthfully, and he accepted that trust.

140.   As alleged in paragraphs 102 above, Defendant Carolyn Anderson also owed fiduciary duties to members of Rainbow Partners as the *de jure* managing member. Given the special relationship of Excalibur, as the third party administrator, to members of Rainbow Partners, those members placed their trust and confidence in Defendant Carolyn Anderson to carry out those duties in good faith by, among other things, correctly reporting accurate individual and aggregate account values.

141.   As alleged in paragraphs 102-115 above, Michael Anderson breached his fiduciary duties to members of Rainbow Partners by misappropriating funds, inflating individual and aggregate account values, charging and collecting management fees to which he was not entitled, and falsely communicating the need to establish Excalibur as an independent third party administrator.  He further breached his fiduciary duties by promising to produce and then failing to produce trading records and other documents requested by the SEC subpoena and then by obstructing justice by destroying those records.

142.    As alleged in paragraphs 33(b) and 113, on or about January 6, 2017 Michael

Anderson, without authority from other members and in breach of the operating

agreement, issued and had a new investor, Will Cameron Lewis, sign an entirely new

agreement, requiring an initial capital contributions of $750,000, claiming the total

value of the Rainbow Partners was $25 million, and claiming that the third party

administrator would perform independent accounting of all calculations and

monthly account statements.

143.    Defendant Carolyn Anderson breached her fiduciary duties to members of

Rainbow Partners by issuing false monthly account statements through Excalibur

and by misappropriating money belonging to Rainbow Partners into bank accounts

over which she exercised control and had signature authority.

144.    As alleged in paragraphs 118 and 119 above, the consequences of the

conduct of Michael Anderson and Defendant Carolyn Anderson in breach of their

fiduciary duties were both reasonably foreseeable and the proximate cause of

Plaintiff Rainbow Partner's injury.  But for the misrepresentations and omissions by

Michael Anderson and Defendant Carolyn Anderson, members of Plaintiff Rainbow

Partners would never have entrusted their investment funds to them.

145.    As alleged in paragraph 122 above, Plaintiff Rainbow Partners has suffered

injury for which it seeks damages, including rescissionary, compensatory, and

punitive damages.


**COUNT VI**
**Aiding and Abetting Breach of Fiduciary Duty**
**Against**
**Carolyn Anderson**

146.    Plaintiffs repeat and re-allege paragraphs 1 through 145 as if fully set forth herein.

147.    As alleged in this Complaint, Michael Anderson was subject to several express and implied fiduciary duties.

148.    As alleged in Counts IV and V above, Michael Anderson breached those duties to investors in the Wealth Fund and Rainbow Partners.

149.    Defendant Carolyn Anderson had knowledge of the fraudulent conduct and misrepresentations and omissions of Michael Anderson in Rainbow Partners and the Wealth Fund:

(a)    *Rainbow Partners.*  Through her ownership of Seaoma, through her various positions at Rainbow Partners and Excalibur, and through her intimate relationship with Michael Anderson, Defendant Carolyn Anderson knew about investments coming into Rainbow Partners; knew about trading and supervised book keeping by frequenting the offices of BAM and through her 40% control of BAM through Seaoma, her company; knew about the false and misleading monthly account statements issued by Excalibur; knew about misappropriated funds being transferred into the bank accounts at Centennial Bank & Trust for both Rainbow Partners and Excalibur; enjoyed the benefits of a lavish life style in Vail, Colorado based on ill-gotten gains and misappropriated  funds; on information and belief, knew about the purchase of gold bars that were shipped to and received by Michael Anderson, just before their alleged "cruise" by traveling to Florida where they looked for housing to which they planned to flee; and, through the fictitious Kya Andrews, knew about Michael Anderson's obstruction of justice of the SEC

subpoenas by failing to respond to and destroying relevant documents.  She

therefore knew about, or consciously ignored and avoided knowledge of, these

matters and Michael Anderson's many breaches of his fiduciary duties.

(b) *Wealth Fund.*  Defendant Carolyn Anderson also knew about the fraud

being perpetrated by Michael Anderson on investors in the Wealth Fund through

her relationship with Michael Anderson and her knowledge of trading that occurred

both in the offices of BAM and by means of the Trade Station computer located in

the kitchen of their house; her 40% control of BAM, the asset manager, through

Seaoma, her company; the issuance of false monthly account statements by

Excalibur; her knowledge, or failure to ascertain, that Kya Andrews was not a real

person employed at Excalibur as the senior accountant; and monies of the Wealth

Fund transferred into the account of Excalibur at Centennial Bank & Trust over

which she possessed control and exercised signature authority of funds that far

exceeded the monthly $1,700 administrative fee Excalibur earned.

(c)      As alleged in paragraph 18 (a) above, Carolyn Anderson divorced

Michael Anderson in 2009, on information and belief, knowing that he planned to

start operations as an investment advisor in Wyoming without disclosing his prior

criminal history.

150.   Defendant Carolyn Anderson affirmatively, passively and/or silently

substantially assisted Michael Anderson in carrying out his fraudulent schemes in

the following ways:

(a)      She affirmatively assisted Michael Anderson by responding to

investors who invested money in Rainbow Partners, by agreeing to act as registered

agent and managing member of Rainbow Partners, by acting as registered agent for Excalibur, by sending emails from Excalibur to persons making inquiries about accounts,  by issuing and signing checks to investors of Rainbow Partners,  by issuing and signing checks for BAM, and by signing checks for fees to Excalibur;

(b)     She also passively assisted Michael Anderson by issuing false and misleading monthly account statements for Rainbow Partners, by accepting payment of fees as an independent third party administrative allegedly for services provided by Excalibur, and living a lavish life style in Vail, Colorado either while knowing or without questioning where that money came from;

(c)     She remained silent, though she had a duty to act, when Excalibur issued false and misleading monthly account statements,  when Michael Anderson misappropriated investors funds into bank accounts under her control at Centennial Bank & Trust, and when Michael Anderson purchased and received the gold bars; and

(d)     She indulged the fiction that Kya Andrews was a real person responsible for issuance of monthly account statements for Rainbow Partner and the Wealth Fund.

151.    But for her substantial assistance, Michael Anderson's frauds, scheme, misrepresentations and omissions may have been detected sooner or even stopped, and funds belonging to Plaintiffs may not have been misappropriated and gone.

152.    Therefore, Defendant Carolyn Anderson aided and abetted the numerous breaches of fiduciary duties by Michael Anderson.

**COUNT VII**
**INTENTIONAL MISREPRESENTATION**
**Against**
**Estate of Michael Anderson a/k/a Michael Guerra, and Carolyn Anderson**

153.   Plaintiffs repeat and re-allege paragraphs 1 through 152 as if fully set forth herein.

154.   Defendant Michael Anderson a/k/a Guerra engaged in fraudulent misrepresentation and concealments.

155.   As alleged in this Complaint, Defendant Michael Anderson engaged in intentional fraudulent misrepresentations to the Wealth Fund and Rainbow Partner investors by misstating:

(a)   The true monthly account values of investors, and the true monthly and annual performance and returns for Rainbow Partners and the Wealth Fund,

(b)   His movement of money from one brokerage account to another,

(c)   His mismanagement, misappropriation and unauthorized use of monies in various brokerage and bank accounts,

(d)   His trading activity in the NUGT trade,

(e)   Without authority from other members and in breach of the operating agreement, on or about January 6, 2017 Michael Anderson issued and had a new investor, Will Cameron Lewis, sign an entirely new agreement, requiring an initial capital contributions of $750,000, claiming the total value of the Rainbow Partners was $25 million, and claiming that the third party administrator would perform independent accounting of all calculations and monthly account statements, and

(f)   His entitlement to management fees.

156.    Defendant Michael Anderson also engaged in intentional fraudulent omissions and concealments regarding the Wealth Fund by concealing:

(a)    His true identify, and background, including his incarceration for crime,

(b)    His prior fraud in Wyoming,

(c)    His defalcation of funds belonging to investors in the Wealth Fund,

(d)    The true identity of and control over Excalibur, the so-called independent third party administrator of the Wealth Fund, and its fictitious employee, and

(e)    His purchase and receipt of gold bars.

157.    As the controlling general partner and investment advisor to the Wealth Fund, he had a duty to disclose this information both to the investors and to the other general partners.

158.    As alleged in this Complaint, Michael Anderson engaged in omissions and concealments to Rainbow Partners, including

(a)    His prior fraud in Wyoming,

(b)    The true performance data for transactions,

(b)    Values of individual member accounts and the aggregate portfolio of value of Rainbow Partners in the monthly statements and investor agreements,

(c)    True identity and control of Excalibur, as the so-called independent third party administrator for Rainbow Partners,

(d)    Defalcation of funds, and

(e)    Purchase and receipt of gold bars

159.   As controlling member of and the investment advisor for Rainbow Partners, he had a duty to disclose this information both to the other members.

160.   The misrepresentations and concealments described and alleged herein were material because any reasonable person would attach importance to each and every one of them.

161.   Defendant Michael Anderson a/k/a Guerra knew that each one of the misrepresentations and concealments alleged herein was false, and he intended the Wealth Fund's investors as well as the other general partners of the Fund to rely on them to their detriment.  He also knew that the misrepresentations and concealments alleged herein regarding Rainbow Partners were false and intended for members of Rainbow Partners to rely on them to their detriment.

162.   Each of the Wealth Fund's investors and the Wealth Fund's other general partners, as well as members of Rainbow Partners, reasonably and justifiably relied on the representations and conduct of Michael Anderson regarding who he was and his past experience, his trading ability and levels of returns he had produced in the past and could produce in the future, his reasons for switching accounts between brokerage firms, his honesty in handling investor funds truthfully and in good faith, the reasons for his use of Excalibur, as the Fund's third party administrator, his creation and issuance of monthly account statements for investors , and his trading strategy for the NUGT trade.

163.   It was foreseeable to Michael Anderson that each one and collectively all of his misrepresentations and concealments would cause loss to the Fund's investors. But for his misrepresentations and concealments, the Fund's general partners

would not have established the Fund and let him manage and trade for it, and none of the Fund's limited partners would have invested in the Wealth Fund.  Nor would members of Rainbow Partners have invested in that investment club and permitted him to trade their investment funds, including IRAs and pensions plans.

164.    The misrepresentations and concealments of Defendant Michael Anderson proximately caused the harm suffered by the Fund's limited partners and its other general partners and by members of Rainbow Partners.  Defendant Michael Anderson's fraudulent statements and conduct form the causal link to the harm suffered by investors in the Wealth Fund and Rainbow Partners because any reasonable investor who was led to believe in the truth of his misrepresentations and concealments would perceive the risk of loss to his or her investment less likely and more remote.  However, the losses suffered by the Wealth Fund and Rainbow Partners were squarely within the zone of risk Michael Anderson created but sought to conceal and downplay by his untrue and fraudulent statements and his fraudulent conduct.

165.    As alleged in paragraphs 97 and 122 above, Plaintiffs have suffered injury for which they seek damages, including rescissionary, compensatory, and punitive damages.

## COUNT VIII
### NEGLIGENT MISREPRESENTATION
#### By
### Estate of Michael Anderson a/k/a Michael Guerra

166.    Plaintiffs repeat and re-allege paragraphs 1 through 165 as if fully set forth herein.

167.    As alleged in Counts I, II, IV and V above, Michael Anderson owed duties to investors of the Wealth Fund and Rainbow Partners.

168.    As alleged in this Complaint, Michael Anderson breached those duties in several respects.  He knew or should have known that his conduct, representations and omissions would cause injury to Plaintiffs.

169.    As alleged in paragraphs 93-94, 118-119, 144, and 163- 164 above, the negligent conduct of Michael Anderson was the proximate cause of the injuries suffered by Plaintiffs.  It was foreseeable, and it was within the zone or risk created by Michael Anderson.

170.    As alleged in paragraphs 97 and 122 above, Plaintiffs have suffered  injury for which they seek damages, including rescissionary, compensatory, and punitive damages.


**COUNT IX**
**AIDING AND ABETTING OF INTENTIONAL AND NEGLIGENT**
**MISREPRESENTATIONS**
**Against**
**Carolyn Anderson**

171.    Plaintiffs repeat and re-allege paragraphs 1 through 170 as if fully set forth herein.

172.    As alleged in Counts VII  and VIII above, Michael Anderson made intentional and negligent misrepresentations and omissions.

173.    As alleged in paragraphs 18-20, 22, 38-41, 54-59, and 71-74 above, Defendant Carolyn Anderson had actual knowledge of the intentional and negligent

misrepresentations of Michael Anderson with whom her business affairs and personal life had been inextricably intertwined for at least ten (10) years.

(a)     Defendant Carolyn Anderson signed the checks for BAM; owned 40% of Bighorn Holdings, the parent of BAM, through her consulting company, Seaoma; and, she is the registered agent of Excalibur, the third party administrator for the Wealth Fund.

(b)     During part of the time period from summer 2015 to March 2016  that Joe St. John was president of BAM, Michael Anderson told Defendant Carolyn Anderson to supervise Mr. St. John at the offices of BAM in Vail, Colorado to make sure he did not engage in trades and instead relegated his duties to the ministerial functions of a clerk.

(c)     Further, she is listed as the managing member of End of the Rainbow Partnership on that company's operating agreement.  During the time period that Rainbow Partners was registered as a Colorado limited partnership, she was listed as both the general partner and the registered agent of Rainbow Partners.   Even after the Rainbow Partners was re-registered in Florida, she continued to be the registered agent.   Further, from at least July 2016 through January 2017, Defendant Carolyn Anderson signed checks to investors in the Rainbow Partners drawn from Rainbow's bank account at Centennial Bank & Trust.

(d)     The computer equipment for Trade Station was set up in and used from the kitchen of the Anderson's home in Vail, Colorado.

(e)     Therefore, Defendant Carolyn Anderson knew about the fraudulent and negligent conduct alleged herein.

174.    Defendant Carolyn Anderson substantially assisted in the fraudulent and negligent conduct by Michael Anderson as alleged herein.  As stated in paragraph 18(d) above, Carolyn Anderson has described herself as a professional market timer and day trader.

Bighorn Wealth Fund

175.    Defendant Carolyn Anderson substantially assisted in the misrepresentations of Michael Anderson regarding the Wealth Fund in the following ways, among others:

(a)  Assisted in creation of the Wealth Fund by receiving funds in an account at Centennial Bank & Trust, an account which she controlled;

(b)     In or about July 2016,  when BAM was in the process of migrating all of its separately managed accounts client accounts from TD Ameritrade to Trade Station,  an on-line broker-dealer trading platform for access to multiple asset classes, Carolyn Anderson helped prepare these client applications.

End of Rainbow Partners

176.    Defendant Carolyn Anderson  substantially assisted in the misrepresentations of Michael Anderson regarding Rainbow Partners in the following ways, among others:

(a)     As alleged in paragraph 18(e) above, she has listed on her 2014 bankruptcy petition two other companies when describing her business: the Rainbow Foundation, and Rainbow Partners.

(b)     When the Rainbow partners was set up, Defendant Carolyn Anderson was listed as the general partner and registered agent.

(c)      Signed disbursement checks drawn on Centennial Bank & Trust paid to Rainbow Partners.

(d)      In  March 2017,  when a member/investor in Rainbow Partners contacted Trade Station to find out the current status and dollar amount at Trade Station of the account for Rainbow Partner, that member was told that Carolyn Anderson's name was on the account and she would have to give her approval before Trade Station could provide that information.

Excalibur

177.   Defendant Carolyn Anderson  substantially assisted in the misrepresentations of Michael Anderson regarding both the Wealth Fund and Rainbow Partners in the following ways, among others:

(a)      Seaoma Consulting, her company, is registered agent for Excalibur

(b)       As alleged in paragraphs 54 and 56 above,  Excalibur has either misappropriated or illegally received funds of $505,800.

(c)      Remaining silent and masking the true existence or identify of Kya Andrews, who incorporated Excalibur, who was the contact person for the false monthly account statements of investors in the Wealth Fund and Rainbow Partners, and who diverted inquiries for records to respond to the SEC subpoena to Michael Anderson.

178.   Therefore, Defendant Carolyn Anderson aided and abetted Michael Anderson's intentional and negligent misrepresentations and omissions.


**COUNT X**
**NEGLIGENT MISREPRESENTATION**

**Against**
**Carolyn Anderson**

179.     Plaintiffs repeat and re-allege paragraphs 1 through 178 above  as if fully set forth herein.

180.     As alleged in Counts V above, Defendant Carolyn Anderson owed duties to investors of the Wealth Fund and Rainbow Partners.

181.     As alleged in this Complaint, Defendant Carolyn Anderson breached those duties, directly and/or indirectly through aiding and abetting, in several respects. She knew or should have known that her conduct, representations and omissions would cause injury to Plaintiffs.

182.     As alleged in this Complaint, the negligent conduct of Defendant Carolyn Anderson was the proximate cause of the injuries suffered by Plaintiffs.  It was foreseeable, and it was within the zone or risk created by Defendant Carolyn Anderson.  But for her conduct and concealments, as well as her misrepresentations or omissions,  Plaintiffs would not have initially invested or remained invested and could have made timely withdrawals before defalcation and squandering of their investment  funds took place.

183.     As alleged in paragraphs 97 and 122 above, Plaintiffs have suffered  injury for which they seek damages, including rescissionary, compensatory, and punitive damages.

**COUNT XI**
**Civil Conspiracy**
**Against**
**Estate of Michael Anderson a/k/a Michael Guerra,  and Carolyn Anderson**

184.    Plaintiffs repeat and re-allege paragraphs 1 through 183  as if fully set forth herein.

185.    Michael Anderson and Defendant Carolyn Anderson agreed with each other to conspire against Plaintiffs when they:

(a)      Formed a number of affiliated corporations, foundations, partnerships, and limited liability companies, some of which were shams,

(b)      Set up brokerage and bank accounts over which they exercised control,

(c)      Issued through Excalibur false and misleading account statements,

(d)      Paid themselves management and third party administration fees,

(e)      Used ill-gotten gains to finance their lavish life style in Vail, Colorado.

186.    As alleged in this Complaint, Michael Anderson and Defendant Carolyn Anderson engaged in a number of unlawful acts, including:

(a)      Issuing false and misleading monthly account statements;

(b)      Misappropriating investor funds from accounts at TD Ameritrade and InterActive Brokers and commingling those funds with other accounts – including BAM, Rainbow Partners and Excalibur – at Centennial Bank & Trust over which they exercised control;

(c)      Removing and destroying computer hard drives and records regarding trading, client accounts, fees earned and paid, payment of expenses allegedly legitimately incurred  by Rainbow  Partners  (e.g., car lease payments);

(d)      Purchasing $1,001,348.50 worth of gold bars with investor funds.

187.    Michael Anderson and Defendant Carolyn Anderson also engaged in a number of lawful acts by unlawful means, including:

(a)     Soliciting investors, but using false performance data and falsely stating the amount of AUMs in Rainbow Partners;

(b)     As alleged in paragraph 28 above, soliciting IRA money to be custodied by Midland as alternative asset managers, but then using those funds to further their fraud in Rainbow Partners; and

(c)     Placing a trade in NUGT, but exceeding prudent concentration limits and failing in breach of fiduciary duties to monitor and close out the NUGT trade before the Wealth Fund incurred a $2.4 million loss.

188.    Michael Anderson and Defendant Carolyn Anderson engaged in the following overt acts to further their conspiracy

(a)     On or about September 26, 2016, Michael Anderson transferred $1,000,000 from the account of Rainbow Partners at TD Ameritrade into the Wealth Fund's account at Interactive Brokers.

(b)     On or about January 25, 2017, Michael Anderson transferred $1,001,348.50 to Goldline in Los Angeles, California to purchase bars of gold.

(c)     On or about January 27, 2017, Michael Anderson transferred $1,010,000 from the Wealth Fund's brokerage account at InterActive Brokers to the Wealth Fund's account at Centennial Bank & Trust in Vail, Colorado; and, on January 30, 2017, Michael Anderson transferred another $200,000 from the Fund's account at Interactive Broker to the Wealth Fund's account at Centennial Bank & Trust in Vail, Colorado.  The total amount transferred from the Wealth Fund's account at

Interactive Brokers to the Wealth Fund's account at Centennial Bank & Trust was $1,210,000.

(d)     As alleged in paragraphs 54 and 56 above, Excalibur has either misappropriated or illegally received funds of $505,800.

(e)     For the relevant period, Michael Anderson and Defendant Carolyn Anderson received management fees of approximately $40,900  as well as $8,800 in fees for Excalibur, as third party administrator of the Fund.

(f)     Michael Anderson and Carolyn Anderson removed the Trade Station from their home, through which Michael Anderson engaged in stock trades,  so that its whereabouts are unknown.

189.    As a result of the conspiracy effectuated by Michael Anderson and Defendant Carolyn Anderson, Plaintiffs have suffered injury for which they seek damages, including rescissionary, compensatory, and punitive damages.

**COUNT XII**
**CIVIL THEFT , C.R.S § 18-4-405**
**Against**
**All Defendants**

190.    Plaintiffs repeat and re-allege paragraphs 1 through 189  as if fully set forth herein.

191.    Carolyn Anderson and Michael Anderson knowingly obtained or exercised control over Plaintiffs' funds without authorization.

192.    Carolyn and Michael Anderson intended  to permanently deprive the Plaintiffs of their use, enjoyment or benefit of their funds.

193.    Plaintiffs have made a demand on Michael Anderson and Carolyn Anderson

to return the funds that were misappropriated, but they have refused to do so.

194.    Misappropriation and theft of the funds by Defendants have caused Plaintiffs

damages in an amount to be shown at trial.

**COUNT XIII**
**CONVERSION**
**Against**
**All Defendants**

195.    Plaintiffs repeat and re-allege paragraphs 1 through 194  as if fully set forth

herein.

196.    The Defendants, without authority, exercised dominion and ownership over

Plaintiffs' funds.

197.     Carolyn and Michael Anderson intended  to permanently deprive the

Plaintiffs of their use, enjoyment or benefit of their funds.

198.    Plaintiffs are unable to notify either Defendant Michael Anderson and

Carolyn Anderson  for the return the funds that were misappropriated.  Defendant

Michael Anderson is deceased and the whereabouts of Defendant Carolyn Anderson

is unknown.

**COUNT XIV**
**BREACH OF CONTRACT**
**Against**
**Estate of Michael Anderson a/k/a Michael Guerra**
**And**
**Carolyn Anderson**

199.    Plaintiffs repeat and re-allege paragraphs 1  through 198 as if fully set forth

herein.

200.    Michael Anderson and Defendant Carolyn Anderson breached a number of
agreements to which they were parties, including the limited partnership agreement
for the Wealth Fund, the membership agreement for Rainbow Partners, and the
third party administration agreement of Excalibur.

Breach of BH Wealth Fund Limited Partnership Agreement

201.    As stated in paragraph 10 above, the limited partnership agreement for the
Wealth Fund provided that the "primary investment objective Partnership is
preservation of assets and growth of capital." By misappropriating and comingling
funds of investors in the Wealth Fund, Michael Anderson breached the partnership
agreement.

202.    In addition, the agreement of limited partnership provided that the
partnership will ordinarily invest in securities for short periods, even as little as a
portion of one day. Michael Anderson violated the partnership agreement by placing
an overly concentrated trade in NUGT and for longer than the short period
contemplated by the partnership agreement and by failing to monitor that trade to
preserve assets.

203.    Further, Michael Anderson also violated the implied covenant of good faith
and fair dealing as regards both the other limited partners and the other general
partners.

204.    Further, the partnership agreement required Michael Anderson , as the
designated general partner, to cause the Wealth Fund to keep complete and
accurate books of account.   Michael Anderson violated that provision in the

partnership agreement when he removed hard drives from computers and destroyed the books and records of the Wealth Fund.

Breach of Operating Agreement for Rainbow Partners

205.   The limited liability company agreement of Rainbow Partners stated that  the only purpose of Rainbow Partners shall be to invest assets in securities of the financial and educational benefit of tis members.   By misappropriating investor funds for his and Defendant Carolyn Anderson's personal use, Michael Anderson breached the Rainbow Partner's agreement.

206.   The agreement also provided that Defendant Carolyn Anderson was responsible for the day-to-day operations of the Rainbow Partners.  The agreement further provided that no member, including the managing member, shall "do any act detrimental to the interests of the limited liability company" or "which would make it impossible to carry on the business or affairs of the limited liability company."  By permitting the fraudulent conduct, misrepresentations and omissions alleged in this Complaint to occur, Defendant Carolyn Anderson, as managing member, breached the operating agreement for Rainbow Partners.

207.   Without authority from other members and in breach of the operating agreement, on or about January 6, 2017 Michael Anderson issued and had a new investor,  Will Cameron Lewis,  sign an entirely new agreement, requiring initial capital contributions of $750,000, claiming the total value of the Rainbow Partners was $25 million, and claiming that the third party administrator would perform independent accounting of all calculations and monthly account statements.  In doing so, Michael Anderson breached the operating agreement of Rainbow Partners.

208.   Accordingly, Plaintiffs have suffered injury for which they seek damages, including rescissionary, compensatory, and punitive damages.

## **PRAYER FOR RELIEF**

For his prayer for relief, Plaintiff seeks:

A.   Rescission damages, or in the alternative, actual loss  or  compensatory damages ;

B.   Punitive damages and/statutory damages authorized by law;

C.   An accounting by all Defendants of use of funds of Plaintiffs;

D.   Constructive Trust;;

E.   Pre-Judgment attachment;

F.   Pre-Judgment Interest;

G.   Costs and Attorneys Fees;

H.   Post- Judgment Interest; and

I.   Such other relief as the Court deems fair, just and equitable.


Dated:   June 27, 2017                    *s/ TV Sjoblom*
                                          Thomas V. Sjoblom
                                          **Attorney for Plaintiffs**

                                          1875 I Street, N.W.
                                          Suite 500
                                          Washington, D.C. 20006
                                          (202) 429-7125
                                          Email: tvsjoblom @tvs-law.com
                                          www.tvs-law.com